Please be seated. We'll now hear 25-4068 in re Church of Jesus Christ of Latter-Day Saints. Good morning, Your Honor. May it please the Court, it's an honor to be here. I hope you'll reserve a few minutes to reply. We'll see how the timer and the proceedings go. You're Mr. George, I assume. I am. I'm sorry, yes, Mr. George, for plaintiffs below and here for appellants. I'd like to focus on the issue of the statute of limitations and the similar decision by the court below as a matter of law that the Utah Charitable Solicitations Act does not extend a duty to donors. Before you get into your legal argument, I'm unclear about some facts and maybe it's just not in the record, but in alleging your fraud, the statements that you're alleging were fraudulent could have been heard at a there was a press conference, there was something in the Salt Lake Tribune, and there was something in a church site. There were some quotations that we found after learning about this. Okay, that's actually my question. Yes. Is there anything in the record or in the complaint saying how your clients learned about this assertion that tithing funds would not be used in this development? Yes, there is. As your honors may be aware, this was a it's an MDL, so there were several complaints filed across the nation consolidated before Judge Shelby. And in many of those complaints, the plaintiffs allege that when the SEC, the 2023 SEC consent order became public and 60 Minutes did. No, no, when they heard how they learned about the statements that they now allege were false. The statement that no tithing funds would be used for this development. Oh, that's not alleged in the complaint. How they individually, in fact, that's one of the deficiencies. So we don't know how they learned about that. It's not alleged in the complaint. That's one of the deficiencies that Judge identified that we would amend to cure, but because Judge Shelby dismissed the complaint with prejudice, because the claims were time barred under his reasoning, we weren't given the opportunity. So that's one of the areas that we would. There's no pending proposed amended complaint or anything like that that states how your clients first heard the false, the allegedly false statements. Is that right? We have not drafted or submitted such a document to the court. So we don't know. We don't know. Okay. I've talked with my clients. Yeah. But there's nothing in the public record at this point in time. Substantiating that. Under the decision of the District Court, the timer on the same reasoning, and under the ruling by... It's not about their actual knowledge. It's about what they reasonably should have known, or could have known. And that's the distinction that needs to be made. In all of the cases, constructive knowledge exists, but one cannot construct knowledge without some personal fact showing that the person will reach out and say, oh yes, I saw this, right? When there's significant media coverage nationwide and locally, that's been sufficient. That's what there was here. As a blower's report back in, whatever it was, late early 2020. I mean, that's been held to be sufficient. That's not refuted? Right. So, not understanding why they didn't have... Why they didn't hear it? No, no. I don't think it matters whether they heard it or not. Oh. Well, constructive... They reasonably could have known by that. In every case where constructive knowledge is built on media reports, those cases always have something else that is the fact that the plaintiff had. They said, you should know about this. You should keep your ear open. And these media reports show that if you had done that... Well, sir, it is a religious community and a devoted one if we're talking about tithing money. And so I think that it's different than if you have a class action for a widget. In other words, people collect every Sunday, and I suspect that that is relatively big news in the church community, that even if they're outraged that these revelations are being made and dispute them or whatever else, it would have a buzz within that community. And so it seems like a poor case to say they wouldn't constructively know. This is an affirmative defense, right? We're at the pleadings, and we've alleged that in some of the complaints that plaintiffs did not know until that 60 Minutes article happened. And I was sensitive to this. We had many conversations with our plaintiffs about this because, you know, I want to know what the facts are so we can allege them. So when we allege in the consolidated complaint that they didn't have any earlier knowledge, that is true. Now, there'll be discovery. And as Judge Hartz wrote in Fernandez versus Clean Hall... You just lost two members of the panel. And I apologize, but... I don't feel like you're answering Judge Phillips's question. He points out that this case is unique to some of the cases that you're discussing. The fact that you have a large, large religious community, and this news was huge. There were many, many different media releases and reports all over a short period of time. This is different than some of the other cases that you've cited in terms of whether media might be enough. Could you respond to that? They're part of this community. Tithing is a big issue for all of them. People heard these reports. They talked about them. And I guess I'm not hearing you respond to that particular significant aspect of the case. I'm not turning a blind eye to it, which is why I had conversations with my clients. The legal fact of constructing knowledge has a limitation. What the court below created, by deciding as a matter of law that each plaintiff had heard the news, I was saying the allegations, he created a legal duty for Mormons in this case to follow the news. No. Or a legal duty for people... I'm not seeing that at all. He was very, very clear about what they should have known or could have known with due diligence, with any diligence at all. And that's not a legal duty to watch the news or watch any particular program. My plaintiffs missed the news at bottom. They allege in the complaint that they didn't hear. There's a fairness issue here. I think that's what you're arguing. It's unfair to hold them to stuff that only appeared in five or six media outlets. But that's why I asked about how they knew about the statement that was allegedly false. Because they all, purportedly, relied on the statement that tithing funds were not being used in this development. And now they're suing because that statement, they say, was false. And they relied on it. Well, how did they learn about that statement? And the complaint says there's three places where that statement appeared. Correct me if I'm wrong about this. There was the press conference where there was a statement made. There was a report on that in the St. Louis, I'm sorry. Salt Lake City. Yes, St. Louis. Salt Lake City Tribune, is it? Yes. And a statement in a church publication. If that's where they're getting the information that they relied on and was false, why can't they be held to the same sort of, to keep up on those publications? The Tribune is definitely, as I recall from the complaint, published the allegation that this statement was false about the tithing. How can you rely on something in the Tribune as causing you to continue to tithe because of a false statement by a church leader? But you don't have to read that paper to learn that there was allegations of that statement having been false. That seems totally fair to hold you to constructive knowledge in that context, does it not? If the allegations in the complaint were plaintiffs heard on this date and read this article, those statements were examples of what was being talked about in the community. I believe, if I recall, the church newspaper was the primary conduit for most of our plaintiffs as to understanding how the funds would be used. Or just the talking in temple, right, based on something like that. And they were showing that it would have a class action. They were showing that this was something that was broadcast nationally. Not that our plaintiffs read the Salt Lake Tribune article, but that they were aware of this kind of message. And that's one of the deficiencies that, again, Judge Shelby identified for their common law claims that we would seek to clarify on appeal. I also need to point out that the plaintiffs who are on appeal are former members. They were members at the time that these representations about the use of the funds or the non-use, more importantly, for these commercial ventures. They were still members. They left after that period of time. And so they were no longer close within the community. And, in fact, none of them, aside from one of them, lives in Utah or in the Salt Lake City area. They left the church before the allegations by the whistleblower? Yes, I believe that's the case. That may be drier timber. In other words, I'd expect that the word would spread even more quickly amongst former members. But let me ask you this. They weren't bitter about it. They left for many reasons. And it wasn't as if they left with an ax to grind. So I understand the boundaries of what you're arguing. Would you contend that there are still groups of plaintiffs for whom the statute of limitations has, as of today, not even begun to run? Oh, interesting. I don't have those as my clients. So I don't know. I can very easily imagine that there are people who don't watch 60 Minutes. I don't watch 60 Minutes. Quite candidly, until my clients came to me with this, I didn't know about any of this. Can I ask you a legal question, just because you're running short on time and I want to make sure I ask you? As far as the, let's see, the Russell-Packard decision and the discovery rule statutory versus equitable, and equitable being concealment, concealment would also be a basis by which there could be constructive knowledge delayed. Is that right, under the statutory disclosure? Absolutely, Your Honor. Yeah. If you look at the facts, you can't investigate. And so if someone blocks the facts, you can't investigate. The claim can't accrue until you get the facts. So concealment applies in both situations? Yes, Your Honor. Leaping very quickly, what matters at this stage is what is alleged in the complaint. In Fernandez v. Clean Hall, this court held that the typical way an affirmative defense like this is addressed, unless all of the elements are admitted in the complaint, is an answer by defendant, discovery, and then possibly summary judgment if the facts turn out to show that the plaintiff knew that their claim accrued earlier than the allegations would have it. A second problem then that the court did in manifesting its error in overlooking the pleadings themselves is that it went outside the pleadings, finding nothing in there to say when the time started kicking, and looked only at news stories. The problem with that is that all of the articles in which news stories were used as constructive notice always have some fact that's personal to that plaintiff that would have itself tweaked them to look and listen. And that's that fact that's the key to the gateway of constructing knowledge. A court cannot on its own say you should have known about this when there's nothing in the complaint or even if it's an evidentiary question, nothing showing that there was something that tweaked them to make them pay attention. Or if there's a duty like an investor has to investigate, then you have to reach out to the news because you have money riding on it and you're sophisticated, you know how the game works. The third error that the court made in the limitations issue is that Judge Shelby did not identify the time when the clock started ticking. It was within months, a month, three, four, five months. A few more months in plaintiff's time would have been timely. The Utah Supreme Court faced the same issue in Russell Packard. And it said, we acknowledge that it is possible and perhaps even probable, if I may continue the quote, Your Honor, that a reasonable plaintiff would have discovered a sufficient number of these facts in the months before the expiration of the limitations. However, we are persuaded that one could legitimately dispute the precise point at which a reasonable, diligent plaintiff would have discovered such necessary facts because we cannot conclusively determine when plaintiffs should have been charged with constructive notice of their claims. We cannot ultimately determine whether even assuming plaintiffs should have discovered their claims. At some point in the four-year statute, plaintiffs acted reasonably in not following the complaint earlier. Here we have a lot of questions, but nothing in the pleadings that is saying it starts now. And even Judge Shelby's efforts to construct knowledge don't fix a date when the clock actually started. It may have started after the five months, and it certainly did under the allegations in the complaint. Thank you. Thank you. Mr. Clement. Good morning, Your Honors. May it please the Court. Paul Clement for the appellees. I'm just going to start with a point of clarification. In paragraph 22 of the complaint, Mr. Christensen, one of the plaintiffs, alleges that he is an active member of the church, at least at the time the complaint was filed. So I just wanted to clarify that. But to start with a slightly broader point, it's obviously our view that there are multiple problems with the complaint that was filed in this case. It's a complaint that alleges, you know, tithing fraud. It asks for an accounting. It asks for the appointment of a special master to oversee the church's finances. So in our view, this is a complaint that raises serious First Amendment problems. But at the same time, I think Judge Shelby, applying principles of constitutional avoidance, was able to avoid kind of getting into those constitutional waters by recognizing that this claim here was quite untimely. And we would urge affirmance on that ground, which we do think would serve kind of constitutional avoidance principles. And in that regard, I would just sort of add, you know, I don't think this is outcome determinative. I think what's outcome determinative is the thing I'll talk about second, which is Utah law, which quite clearly says that constructive knowledge is enough. And it repeatedly uses this phrase as the means of knowledge is enough. So just don't think you can ignore all these publicly available sources. But just as a contextual point, this is the rare case where there's kind of a market test as to whether people that were interested in filing a timely lawsuit could do it based on the whistleblower report and based on the coverage of that report. And so you have at least three lawsuits. The Gaddy suit, which I know this court, at least one member of this court, is very familiar with. But then also you had a pro se claim filed, the Cook complaint that's mentioned in the papers. And that was filed in February of 2020. So within three months of the whistleblower report, three pro se plaintiffs were able to file a lawsuit in which they cited the Washington Post article that discussed this whistleblower report. And then, of course, you have the Huntsman suit that followed, I think, in 2021. So you had at least three different suits from people who saw the same reports and were able to bring timely suits. Does it matter how sophisticated that plaintiff was or how well read they were or what publications they subscribe to? Is that relevant to the idea that you can't really conclusively determine when they would have had this constructive knowledge? And do you kind of need to look at their individual situation to know when they would have that constructive knowledge? It's a reasonable person standard. I don't think so. I mean, I think the whole point of having actual knowledge and then constructive knowledge is to develop a test that's more objective. Now, I'll grant you, look, if the only plaintiff that was able to sort of put all this together and file a complaint was Mr. Huntsman, you might say, okay, well, that's somebody who both had more tithing dollars at issue and was more sophisticated and was in church leadership while he was a church member. So if that was the only one, maybe those sort of market tests of whether there was enough knowledge would be less persuasive. But I think by the time you get from the Cook plaintiff to the Huntsman plaintiff, you sort of run the gamut here. But at the end of the day, to me, that's what makes this a very straightforward case. But as to the actual legal test, I think if you look to Utah law, Utah law is quite clear, and it starts with the Baldwin against Burton case, which we cite, but it continues with more recent cases like the Colosimo case, which we also cite, and both of those are Utah Supreme Court cases. And they go out of their way to say that the test is constructive knowledge, and the way they talk about that is what you need is the means of knowledge. Whether you actually got the knowledge doesn't matter, and I don't see how you can't say that all of these publications that range from national publications to the Salt Lake Tribune don't give you the means of knowledge. So I understand the boundaries of your argument. Are you saying that at some point there was a critical mass and all plaintiffs, the statute of limitation accrued as of a certain day?  Yes. There might be specialized circumstances. You might have a minor and circumstances like that where, as a matter of a doctrine, the statute of limitations is told as to them. So I haven't run the math in my head. There might have been a minor who was tithing who might be able to have sort of a timely claim even at this juncture. But I think in the main, precisely because the test is objective, I think— Statute of limitations, which is an unusual combination, and statute of limitations is fact-laden and dependent. Should that give us some pause? I mean, it should give you that much pause, but I think you should get over it. I mean, all those cases say we don't often do that, but, you know, often isn't always. And, you know, I was struck on rereading it that even the Bisline case, which was this extraordinary case about the sort of community that was isolated community with brainwashing, even in the end, there were a handful of—at the end of the opinion, there were a handful of individuals who had left the community and the statute of limitations had run. And even on a motion to dismiss in that case, their claims, except for the TVPA claims, which had a 10-year statute of limitations, all those other claims were dismissed on a motion to dismiss. How would you state the objective test? So I would state the objective test at the general level as the means of knowledge, and then I would say— And to whom? To a reasonable person? To a reasonable person in the circumstances of the plaintiff? If it's in the circumstances of the plaintiff, what are potential circumstances? I mean, Mr. Grinberg, for example, was an investor who had tens of millions of dollars at stake. That's an easy one. Right. But how would you frame the reasonable person? I assume the objective test means it's in terms of a reasonable person.  But a reasonable person in what circumstances? Are there any? I think in the circumstances of the plaintiff, I would accept that, and that's why I think the question you started with is obviously a helpful question, I think, for sort of framing this, which is, you know, we're talking about members of a religious community. If their whole claim, at the end of the day, maybe they weren't specific about it in their complaint, but the guts of their complaint is that we heard something from our religious leaders in this religious community. We were paying enough attention to that to be misled by it. We relied on it, so we were sort of paying enough attention to it that we continued to act in reliance on that. And then you actually have an event that is more publicized than the sort of predicate events, and you're claiming that you didn't have knowledge of it. I don't have to, I mean, that strikes me as a little implausible, to be candid, but whether it's implausible or not, take the complaint as a given. I think it doesn't meet this kind of test, and I think they're just, in this context, you would say they had constructive knowledge, so we don't have to worry about whether it's a plausible allegation or an implausible allegation. Even as pled, it creates, pleads right into a statute of limitations problem. And, you know, I think part of the reason it's appropriate here on a motion to dismiss stage, I think the relevant facts are all there on the face of the complaint. I mean, one of the things that's striking about this complaint is it refers to the whistleblower report, which was publicized back in December 2019. It refers to that over 20 times, and it refers to the IRS report, which they claim was the watershed event for their clients. It only refers to that three times. So I just think in the context of this case, I think Judge Shelby handled this exactly right, which is he looked at what was alleged in the complaint, the timing of the complaint, the filing of the complaint. It's kind of a matter of math at that point. Was the Bisline case a dismissal? It was. Not a summary judgment. Yeah, it was a motion to dismiss. We decided that on the fact we had the fundamentalist church, the cult-type situation for the plaintiffs. So we decided that on the dismissal stage.  Obviously, there were a lot of claims that you said were timely, but at the end of the opinion, like one of the last things in the opinion, you talk about a handful of the plaintiffs there who were able to leave the community earlier than most of the rest of the plaintiffs, and you said those would be dismissed as untimely on 12B6. One other contextual point. I mean, again, I don't think ultimately it's legally dispositive, but I do think it sort of can inform the analysis here. I mean, there is a perfectly logical explanation for why this suit was filed when it was filed, which is it followed almost immediately from the panel decision in the Ninth Circuit Huntsman case, and there was, you know, a brief about five-month window when it looked like the Ninth Circuit was going to give a green light for these kind of claims, and this claim was filed, you know, during that window. Now, you know, I don't begrudge anybody for responding to those incentives, but it does sort of explain what No, that's speculation anyway. Yeah, exactly, exactly. But, you know, but what's not a matter of speculation is they waited, you know, a good six months even after the IRS report came out, the cease and desist order came out, before filing this suit. But as you say, what's not a matter of speculation, what's a matter of the calendar, is that there were more than three years from the events becoming widely publicized and the filing of the suit. And I don't think there was any particular error on Judge Shelby's part to not specify, all right, here's the date, it was February 17th. I mean, I think it's actually not uncommon in statute of limitations cases to say that the plaintiff was on knowledge or constructive knowledge, at least by date X, and that's sufficient to decide the statute of limitations. I'm tempted to try to get in an interesting discussion of religious autonomy doctrine, but I really do think it is best to be avoided, so I'm happy to give the rest of my time back to the panel if there are no further questions. Thank you. May I have 30 seconds? You may. Thank you. Again, Scott George for Appellants. Mr. Clement identified two Utah cases that he says establishes that constructive notice in this case was appropriately done by Judge Shelby, Colosimo and Baldwin, and they illustrate why it's improper here. Colosimo involved children who had been molested by a priest when they were children. A decade or so later, they decided to sue the church. You've used up your 30 seconds, so speak more quickly. I'm sorry, sue the church. There, there was the tweak I'm talking about. There has to be a tweak personally, and at that time or in the next four years. Thank you. And Baldwin was a duty. Thank you, counsel. Counsel is excused. Case is submitted.